IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ITRIA VENTURES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0142-N |
| | § | |
| ACROPETAL, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Nutech Systems, Inc.'s ("Nutech") Motion for Summary Judgment [24] and Itria Ventures LLC's ("Itria") Motion for Summary Judgment [45]. For the reasons stated below, the Court grants Itria's motion for summary judgment as to Defendant Ascendas Technologies Inc. ("Ascendas"), but otherwise denies both motions.

### I. ORIGINS OF THE DISPUTE

On September 14, 2015, Itria and Defendant Acropetal, Inc. entered into a Future Receivable Sales Agreement ("FRSA"). Itria paid an up front purchase price of $400,000.00 to Acropetal in exchange for a percentage of Acropetal's future receivables, ultimately amounting to $568,000.00. Acropetal agreed to pay Itria a fixed percentage of receivables on a bi-weekly basis until the entire amount of $568,000.00 was paid out to Itria. Itria brought suit against the Defendants alleging that they are liable for amounts still owed under the FRSA.

In July 2016, Acropetal was converted[1] into Ascendas, which operates as an IT staffing company. In August 2017, Ascendas entered into an Agreement and Plan of Reorganization ("APR") with Nutech and Defendant StemGen, Inc. ("StemGen"). These three companies planned to merge into a single public company that would specialize in IT staffing.

Itria claims that after execution of the APR, Nutech took sole control over Ascendas's operations and even exercised control over its bank accounts, payroll, and employees. Itria also claims that Nutech's President, Nachu Anbil, made payments to Itria in satisfaction of Ascendas's FRSA debts.

Nutech, on the other hand, argues that the APR was never finalized and no merger occurred because StemGen had problems with the auditing process. So, although the parties signed the APR, no closing occurred, and the parties instead cancelled the merger. Itria disagrees and argues that Nutech's conduct after execution of the APR shows that Nutech did in fact acquire ownership over Ascendas's assets and liabilities, including Ascendas's FRSA liability.

Itria obtained a judgment against Acropetal in New York state court in December 2017 for amounts due under the FRSA. Pl.'s App. in Supp, Exhibit A-5: New York State Court Judgment [47-6]. Itria now seeks to hold the Defendants responsible for Acropetal's debts under various successor liability doctrines.

---

[1] "Conversion" is a statutory process under Chapter 10 of the Texas Business Organizations Code. *See infra* Part IV.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there

is no evidence[2] to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

---

[2] Itria asks the Court to deny Nutech's motion on the basis that no-evidence motions are not permissible in federal court. Pl.'s Resp. at 40. The Court rejects Itria's invitation. Federal law contemplates summary judgment in circumstances where there is no evidence of an essential element. *See, e.g.*, *Parker v. Bill Melton Trucking, Inc.*, 2016 WL 7117253, at *2 (N.D. Tex. Dec. 7, 2016). Itria recognizes this by acknowledging that a moving party can prevail on summary judgment by referencing the record and showing that there is no evidence of a material fact. *Id.* The Court perceives that what Itria is referring to is a state court no-evidence motion, permitting a movant to merely recite the elements of a claim and state, in conclusory fashion, that there is no evidence of some or all of the elements. Nutech clearly did not file such a motion, and Itria is incorrect in asking the Court to deny Nutech's motion merely because it is based on Itria's lack of evidence of essential elements.

### III. THE COURT DENIES NUTECH'S MOTION FOR SUMMARY JUDGMENT

#### A. *Choice of Law*

The first step to evaluating Itria's successor liability claims is determining which state's substantive law applies. A federal court sitting in diversity jurisdiction applies the choice-of-law rules from the forum state. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000)). So, Texas's choice-of-law rules apply. Under Texas law, a choice-of-law provision in the buying and selling corporations' purchase agreement controls the applicability of successor liability doctrines. *See*, *e.g.*, *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.*, 2010 WL 1417900, at *5 (S.D. Tex. Apr. 7, 2010), *aff'd*, 635 F. 3d 734 (5th Cir. 2011); *Escalon v. World Group Sec., Inc.*, 2008 WL 5572823, at *8 (N.D. Tex. Nov. 14, 2008); *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 853 (W.D. Tex. 2017). Here, Itria's successor liability claims center on the APR, which provides that Georgia law governs the agreement. Pl.'s Resp., App. at 33 [40-3]. The Court will therefore apply Georgia law in assessing Itria's successor liability claims.

Under Georgia law, "a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation. *Bullington v. Union Tool Corp.*, 254 Ga. 283, 284 (1985). Itria argues that Nutech (1) expressly and impliedly agreed to assume the debts of Ascendas, (2) that a *de facto* merger of the companies occurred, and (3) that Nutech

is a mere continuation of Ascendas. Pl.'s Resp. at 8 [40]. The Court holds that Itria raises fact issues preventing summary judgment under the first and third theories.

### B. Fact Issues Exist Regarding Itria's Successor Liability Claim

Nutech argues that Itria cannot prevail on its successor liability claim because Nutech never acquired any of Ascendas's shares of stock, and that even if it had acquired the stock, simply being a shareholder is not enough to hold Nutech responsible for Ascendas's debts. Nutech's Mot. at 4 [24]. The Court, however, holds that Itria raises fact issues on its successor liability claim regarding whether Nutech agreed to assume Ascendas's debts and whether Nutech is a mere continuation of Ascendas.[3]

To support its contention that Nutech agreed to assume Ascendas's debts, Itria cites to the companies' meeting minutes, emails, and Mr. Anbil's conduct after execution of the APR, including payments he made to Itria in satisfaction of Ascendas's FRSA liability. Pl.'s Resp., App. at 1, 3, 4, 35, 36, 60, 61, and 62 [40-1], [40-4], [40-5], [40-6], [40-7]. Itria argues that such communications, as well as Mr. Anbil's conduct, demonstrate that Nutech agreed to assume the FRSA debt owed to Itria. The Court finds such evidence sufficient to raise a fact question on this issue.

---

[3] Itria fails to raise a fact issue under Georgia's *de facto* merger doctrine, which requires a showing of four elements, including that the seller corporation (Ascendas) cease ordinary business operations, liquidate, and dissolve as soon as legally and practicably possible. *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 593, 533 S.E.2d 136, 146 (2000). Itria makes no attempt to demonstrate that Ascendas liquidated and dissolved.

Under Georgia's "mere continuation" doctrine, the Court must look to whether there is common ownership structure, including common objects, assets, and stockholders. *Bullington*, 254 Ga. at 284; *First Support Servs., Inc. v. Trevino*, 288 Ga. App. 850, 853 (2007). Itria cites to evidence showing that Ascendas moved its location to the offices of Nutech in Atlanta, Georgia and that Nutech used Ascendas's employees and exercised control over Ascendas's payroll, profits, and accounts. Pl.'s Resp., App. at 74, 76, 80, and 103–04 [40-9]. Nutech also references an email from Mr. Anbil, in which he states that Ascendas is his company. *Id*. at 36 [40-5]. Drawing all reasonable inferences in Itria's favor, the Court concludes that Itria raises a fact issue under the mere continuation doctrine.

### IV. THE COURT GRANTS ITRIA'S MOTION FOR SUMMARY JUDGMENT AGAINST ASCENDAS

As stated above, Itria obtained a judgment against Acropetal in New York state court for the default of the FRSA. Pl.'s App. in Supp, Judgment [47-6]. Itria argues that it is entitled to summary judgment against Ascendas as the "converted entity" under section 10.106 of the Texas Business Organizations Code. Section 10.106(3) states that when conversion takes effect "all liabilities and obligations of the converting entity continue to be liabilities and obligations of the converted entity in the new organizational form without impairment or diminution because of the conversion." TEX. BUS. ORG. CODE § 10.106(3). Pursuant to the Certificate of Conversion, Acropetal, Inc. converted to Ascendas Technologies on March 6, 2016, as a Texas corporation. Pl's App. in Supp., Exhibit B:

Certificate of Conversion at 46–53 [47-7]. Moreover, the Certificate states that the conversion is subject to Chapter 10 of the Texas Business and Organizations Code. *Id*. at 47.

Ascendas does not dispute that Acropetal converted to Ascendas, nor does Ascendas dispute that it is in fact the "converted entity." Instead, Ascendas argues, without any supporting case law or evidence, that it is not liable because Itria obtained its judgment against Acropetal only after the alleged conversion. Defs.' Resp. at 4 [67]. Ascendas's argument misses the mark. Acropetal's obligations under the FRSA originated on September 14, 2015, well before the conversion took place. Pl.'s App. in Supp., Exhibit A-1: FRSA at 5–18 [47-2]. Section 10 of the statute clearly states that all obligations and liabilities of the converting entity (Acropetal) continue to be obligations and liabilities of the converted entity (Ascendas) without impairment or diminution. TEX. BUS. ORG. CODE § 10.106(3). Contrary to Ascendas's unsupported assertion, the moment of conversion does not cut off liability against Ascendas. *See Wasserberg v. Flooring Services of Texas, LLC*, 376 S.W.3d 202, 207 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Thus, under the plain language of the statute, Ascendas is liable for the FRSA obligation to same extent as Acropetal because it is the "converted entity."

### V. THE COURT DENIES ITRIA'S MOTION FOR SUMMARY JUDGMENT AGAINST NUTECH

The Court denies Itria's motion for summary judgment against Nutech on the basis of alter ego or veil piercing. Itria seeks to pierce the corporate veil of Ascendas to hold Nutech directly liable, as an owner or shareholder. As a threshold matter, the Court notes

that Ascendas's state of incorporation, Texas, provides the relevant law for the veil-piercing analysis. *Davaco, Inc. v. AZ3, Inc.*, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008). The parties likewise do not dispute that Texas law applies.

To pierce Ascendas's corporate veil and hold Nutech responsible for Ascendas's contractual obligations under the FRSA, Itria must present evidence showing that Nutech caused Ascendas "to be used for the purpose of perpetrating and did perpetuate an actual fraud on the obligee primarily for the direct personal benefit of" Nutech. TEX. BUS. ORG. CODE § 21.223(b). Itria makes no such showing. The Court also rejects Itria's attempts to pierce the corporate veil through a "single business enterprise theory." Itria cites old, abrogated case law. Under Texas law, the single business enterprise theory is not a valid basis for piercing the corporate veil in this context. *Id.* § 21.223(a)(2); *see also SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008). Accordingly, the Court denies Itria's motion for summary judgment against Nutech.

## CONCLUSION

The Court grants Itria's motion as to Ascendas, but otherwise denies the motions for summary judgment.

Signed March 5, 2019.

_____
David C. Godbey
United States District Judge